IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs November 7, 2006

## STATE OF TENNESSEE v. ANTHONY DEWAYNE COTTON

**Appeal from the Circuit Court for Lauderdale County
No. 7871  Joseph H. Walker, III, Judge**

---

**No. W2006-00608-CCA-R3-CD  - Filed January 18, 2007**

---

The Defendant, Anthony Dewayne Cotton, pled guilty to possession of a schedule II controlled substance with intent to deliver .5 grams or more, unlawful possession of a weapon by a convicted felon, and possession of drug paraphernalia.  Pursuant to Rule of Criminal Procedure 37, the Defendant reserved as a certified question of law the issue of whether the trial court erred when it denied his motion to suppress.  Finding no reversible error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JERRY L. SMITH, and JAMES CURWOOD WITT JR., JJ., joined.

Kari I. Weber, Somerville, Tennessee, for the Appellant, Anthony Dewayne Cotton.

Robert E. Cooper, Jr., Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; Elizabeth T. Rice, District Attorney General; Tracey Brewer-Walker, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION
### I.  Facts

This case arises from the Defendant's guilty plea to possession with intent to deliver .5 grams or more of a schedule II controlled substance, unlawful possession of a weapon by a convicted felon, and possession of drug paraphernalia.  The Defendant's appeal is based on a certified question of law reserved upon the entry of the Defendant's guilty plea.  Prior to entering a guilty plea, the Defendant filed a motion to suppress evidence, contending that it was obtained with an invalid search warrant. The trial court denied the Defendant's motion, and the Defendant pled guilty, reserving the question of law regarding whether the motion to suppress was improperly denied.

The following evidence was presented at the hearing on the motion to suppress: Investigator Brian Kelly testified that he filed the search warrant in the instant case.  The affidavit in support of

the search warrant stated the following:

Personally appeared before me, Investigator Brian Kelley Lauderdale County Sheriff Department, and makes oath that he has reasons to believe that there is probable cause for believing that John Doe is/are in possession of the following described property, to wit: Cocaine and all drug paraphernalia related to the storage, packaging, sale and/or distribution of Cocaine contrary to the laws of the state of Tennessee, upon the following described property to wit: .said residence being an apartment located in the Brown Village Apartments on 105 Watkins St. in Ripley Tennessee Lauderdale County. The Brown Village apartments consist of two main buildings. Said residence being located in the South building on the South side on the rear near the railroad tracks. The door of said apartment faces Parkway Street. This apartment complex is tan in color with dark brown trim and his reasons for such belief are that Affiant has On February 4th 2005 conducted an investigation into the sale of cocaine by Danny Rogers aka "Tick" at 212 Parkway Street in Ripley Tennessee. Affiant solicited the help of Agent Chris Payne of the West Tennessee Judicial Drug Task Force to attempt to purchase crack cocaine from Danny Rogers aka Tick in the Ripley area. Affiant provided to Agent Payne an audio transmitter and audio/video recording device. Affiant accompanied by Det. John Thompson of the Lauderdale County Sheriff Depart. and Agent Garrison Taylor of the West Tennessee Judicial Drug Task Force did follow Agent Payne to the target area while monitoring the audio transmitter in Agent Payne's possession. Agent Payne made contact with Rogers shortly before 2:00 p.m. where Agent Payne informed Rogers he wanted a "forty" Rogers asked if Agent Payne if he was the police. Agent Payne relied no, Rogers told him to make the block. Agent Payne returned and Rogers told Agent Payne to pull over and park. Rogers said make the block if it makes you more comfortable. Agent Payne returned and Rogers got into the car with Agent Payne and stated that he had to go get it. Affiant observed Agent Payne with Rogers in the car with him pull into the Brown Village Apts. on Watkins St. and Rogers knocking on the door of the above described Apt. Affiant pulled to a more secure location to monitor the audio transmitter. Agent Payne phoned Agent Taylor(whom was with the affiant) and stated that the deal was done and he was instructed to go back to the predetermined meeting spot. Affiant returned and took possession of two pieces of off white chunky substance that Danny Rogers aka "Tick" sold to Agent Payne. Danny Rogers aka "Tick" did obtain the cocaine base from the above described Apartment and was witnessed by Agent Chris Payne. Affiant field tested the substance and it did test presumptive positive for cocaine. He therefore asks that a warrant issue to search the person and premises of the said John Doe as above described in said County, where he believes said cocaine and all drug paraphernalia related to the storage, packaging, sale, and/or distribution of cocaine is/are now possessed contrary to the Laws of Tennessee.

Investigator Kelly testified that he obtained the search warrant and went to execute it around 5:00 p.m. Police officers went to the Defendant's apartment and "knocked and announced." Investigator Kelly saw the Defendant and another individual standing inside the doorway. Police officers entered, secured the area to be searched, and found that the Defendant possessed a handgun, money, and three bags of cocaine base. The Defendant acknowledged that he owned these items. The Defendant requested a copy of the search warrant, and one was left at his residence. Investigator Kelly explained how the affidavit was incorporated with the search warrant.

On cross-examination, Investigator Kelly acknowledged that Agent Payne did not pat down Rogers and did not know if Rogers had drugs on his person before he went into the Defendant's apartment. Investigator Kelly agreed that the side of the apartment building in question contained two separate apartments. He acknowledged that a fence lay between these two apartments and his vantage point. Consequently, Investigator Kelly could not see Roger's and Agent Payne's legs. He acknowledged that he did not witness a drug transaction. Investigator Kelly further testified that he did not know who rented the apartment when he made the warrant, and the apartment building units did not have specified numbers. He acknowledged that the warrant lacked a signature from the judge who received it after the warrant's execution.

## II. Analysis

Because this appeal comes before us as a certified question of law, pursuant to Rule 37(b)(2) of the Tennessee Rules of Criminal Procedure, we must first determine whether the question presented is dispositive. Tennessee Rule of Criminal Procedure 37(b)(2) provides, in pertinent part, that a defendant may appeal from any judgment of conviction on a plea of guilty if:

> (A) the defendant entered into a plea agreement under Rule 11(a)(3) but explicitly reserved--with the consent of the state and of the court--the right to appeal a certified question of law that is dispositive of the case, and the following requirements are met:
> (i) the judgment of conviction or other document to which such judgment refers that is filed before the notice of appeal, contains a statement of the certified question of law that the defendant reserved for appellate review;
> (ii) the question of law is stated in the judgment or document so as to identify clearly the scope and limits of the legal issue reserved;
> (iii) the judgment or document reflects that the certified question was expressly reserved with the consent of the state and the trial court; and
> (iv) the judgment or document reflects that the defendant, the state, and the trial court are of the opinion that the certified question is dispositive of the case.

Tenn. R. Crim. P. 37(b)(2). The certified question of law so reserved is whether the search warrant issued and executed in this case and the resulting search and seizure of the Defendant's person and residence were in violation of his rights against unreasonable search and seizure as provided by Article 1, Section 7 of the Constitution of the State of Tennessee and the Fourth Amendment to the Constitution of the United States. Because all of the evidence indicating that the Defendant had

possession of a schedule II controlled substance with intent to deliver .5 grams or more, a weapon, and possession drug paraphernalia was obtained through the search that he is challenging, were we to conclude that the search was unconstitutional there would be no evidence to support the Defendant's convictions. Accordingly, we agree with the trial court, and the parties, that the certified question of law is dispositive in this case. The prerequisites for the consideration of the merits of a certified question of law have been met, and, therefore, we begin our analysis of whether the search in the instant case was valid.

## B. Motion to Suppress

The Defendant contends that the affidavit in support of the search warrant was invalid because it failed to describe the location to be searched with sufficient certainty. He argues that the warrant was directed against a multi-unit dwelling and failed to sufficiently describe the sub-unit intended to be searched. The Defendant also asserts that the warrant failed to establish probable cause to justify the search because the warrant failed to establish a sufficient connection between the location and the alleged criminal activity. Finally, the Defendant argues that the warrant violates Tennessee Rule of Criminal Procedure Rule 41(c) because it lacks a signature from the judge who received the warrant after its execution. The trial court found that the affidavit stated probable cause for the issuance of the search warrant and provided a sufficient description of the location to be searched. The trial court also found that the return of the search warrant was adequate and that even if the return was inadequate, a faulty return does not invalidate an otherwise legal warrant.

The standard of review for a trial court's findings of fact and conclusions of law in a suppression hearing was established in State v. Odom, 928 S.W.2d 18 (Tenn. 1996). This standard mandates that "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." Id. at 23. The prevailing party in the trial court is "entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." Id. Furthermore, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." Id. However, this Court reviews the trial court's application of the law to the facts de novo, without any deference to the determinations of the trial court. State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001).

We began our analysis with the Fourth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, Mapp v. Ohio, 367 U.S. 643, 655 (1961), which provides as follows:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, will not be violated, and no warrants will issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. Similarly, Article I, Section 7 of the Tennessee Constitution provides:

> people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures; and that general warrants, whereby an officer may be commanded to search suspected places, without evidence of the fact committed, or to seize any person or persons not named, whose offences are not particularly described and supported by evidence, are dangerous to liberty and not to be granted.

Tenn. Const. art. I, § 7. "[A] search warrant shall be issued only on the basis of an affidavit, sworn before a 'neutral and detached' magistrate, which establishes probable cause of its issuance." State v. Stevens, 989 S.W.2d 290, 293 (Tenn. 1999). To establish probable cause to issue a search warrant, an affidavit must supply reasonable grounds for suspicion that an illegal act is occurring. Id. Thus, the need for the magistrate to make a neutral and detached decision regarding the existence of probable cause requires that the affidavit contain more than mere conclusory allegations by the affiant. State v. Moon, 841 S.W.2d 336, 338 (Tenn. Crim. App. 1992). A search warrant must particularly describe the place to be searched. State v. Stinnett, 629 S.W.2d 1, 3 (Tenn. 1982). "[G]enerally a search warrant directed against a multi[-]unit dwelling is invalid unless it describes the subunit intended to be searched with sufficient definiteness to exclude the search of an unintended subunit." Id.

In this case, the evidence does not preponderate against the findings of the trial court. Based on the facts that Investigator Kelly put in his affidavit, the trial court correctly concluded that the affidavit's description of the location to be searched was adequate and that the affidavit stated sufficient probable cause to justify the issuance of the search warrant. The affidavit described the location with sufficient certainty and designated a specific apartment "located in the south building on the south side on the rear near the railroad tracks." This description distinguishes the apartment to be searched from all other nearby apartments. The affidavit also established a sufficient connection between the location and the alleged criminal activity. The affidavit established that Rogers went into the apartment listed in the affidavit to get drugs, and then Agent Payne purchased drugs from Rogers.

The trial court did not err when it found that the warrant's return was satisfactory and that even if the return was inadequate, a faulty return does not invalidate an otherwise legal warrant. The failure of the judge to sign the warrant upon its return was merely a failure to carry out a ministerial duty. "Any defect in the ministerial functions involved in the return of a search warrant and the handling of seized items can not vitiate the validity of a lawful search." Smith v. State, 566 S.W.2d 533, 557 (Tenn. Crim. App. 1978). The Defendant is not entitled to relief on this issue.

**III. Conclusion**

In accordance with the foregoing reasoning and authorities, we affirm the judgment of the trial court.

_____
ROBERT W. WEDEMEYER, JUDGE